UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CRAY INC.,

                Plaintiff,

         v.

RAYTHEON COMPANY,

                Defendant.

CASE NO. C15-1127JLR

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION TO
DISMISS FOR LACK OF
PERSONAL JURISDICTION

## I.   INTRODUCTION

Before the court is Defendant Raytheon Company's motion to dismiss Plaintiff Cray Inc.'s amended complaint for lack of personal jurisdiction.  (Mot. (Dkt. # 37); *see also* Am. Compl. (Dkt. # 29).)  In its amended complaint, Cray alleges that Raytheon misappropriated Cray's high performance computing ("HPC") technology, used that technology to apply for several patents, failed to disclose Cray's technology to the Patent Office as relevant prior art, failed to inform the Patent Office that Cray was an inventor of the HPC technology, and having received several patents based on Cray's technology,

1   has accused Cray of infringing those patents.  (*See* Am. Compl. ¶¶ 9-11, 17-30.)  Cray

2   brings claims for (1) a declaratory judgment that Cray does not infringe four of

3   Raytheon's patents ("the Patents-in-Suit"),[1] (2) a declaratory judgment that two of the

4   Patents-in-Suit are unenforceable for inequitable conduct, (3) a declaratory judgment that

5   the same two patents are unenforceable for unclean hands, (4) correction of inventorship

6   related to the same two patents,[2] (5) breach of contract, (6) unjust enrichment, and (7)

7   conversion.  (*See id.* ¶¶ 31-123.)

8         Raytheon moves to dismiss this case on the ground that this court does not have

9   personal jurisdiction over Raytheon for any of the claims in Cray's amended complaint.

10  (*See* Mot. at 6-8.)  The court has considered the motion, all submissions filed in support

11  thereof and opposition thereto, the balance of the record, and the applicable law.  Being

12  fully advised,[3] the court GRANTS in part and DENIES in part Raytheon's motion for the

13  reasons set forth below.

14  //

15  //

16  //

17

18      [1] The Patents-in-Suit are United States Patent Nos. 7,475,274 ("the '274 Patent"), 8,190,714 ("the '714 Patent"), 8,335,909 ("the '909 Patent"), and 9,037,833 ("the '833 Patent").

19  (*See* Am. Compl. ¶¶ 3-7, Exs. A-D.)

20      [2] The two Patents-in-Suit that are the subject of Cray's inequitable conduct, unclean hands, and correction of inventorship claims are the '909 and '833 Patents.  (*See* Am. Compl.

21  ¶¶ 51-108.)

22      [3] Although both parties have requested oral argument, the court deems oral argument to be unnecessary for the disposition of this motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER- 2

## II.     BACKGROUND

**A.     Factual Background**

Cray is a Washington corporation that has its principal place of business in Seattle, Washington, and "is a worldwide leader in advanced supercomputing."  (Am. Compl. ¶ 1.)  Raytheon is Delaware corporation that has its principal place of business in Waltham, Massachusetts, and "is a technology and innovation leader specializing in defense, civil government and cybersecurity markets throughout the world."  (Mot. at 9-10; Am. Compl. ¶ 2.)  In addition, Raytheon "has been a leader in the HPC field" and has been awarded "numerous" patents for its HPC innovations, including the Patents-in-Suit.  (Mot. at 10.)  "No longer actively engaged in the HPC market," Raytheon now licenses its HPC technology to HPC manufacturers such as Cray.  (*Id.* at 10-11; *see id.*; Resp. (Dkt. # 41) at 7.)

Cray alleges that in 2002 it entered into a contract with Sandia National Laboratories ("Sandia") related to the development of an HPC system known as "Red Storm."  (Am. Compl. ¶ 18.)  As part of the pre-contract bidding process and post-contract development of Red Storm, Cray submitted to Sandia representatives confidential and propriety information regarding the design and operation of Red Storm, including information on Cray's "SeaStar interconnect chip."  (*Id.* ¶ 19.)  Among the Sandia representatives to which Cray submitted this information was an oversight committee that was responsible for validating and challenging Cray's design of Red Storm.  (*Id.*)  Former Raytheon employee James Ballew was an external member of the oversight committee.  (*Id.* ¶¶ 20, 23 (alleging that emails "sent and received by Mr.

1  Ballew in his role as a member of oversight committee [sic] used a 'raytheon.com' email

2  address"); *see also* Mot. at 7, 25.)

3    Cray alleges that as part of Mr. Ballew's participation on the oversight committee,

4  Mr. Ballew "worked and interacted with Cray employees residing in its Seattle,

5  Washington office" (Am. Compl. ¶ 22), and that Cray "disclosed to Mr. Ballew

6  confidential and proprietary details concerning its design of the Red Storm system.  Such

7  information included technical details concerning the interconnect of the Red Storm

8  system . . ." (*id.*  ¶ 20; *see also id.* ¶ 21).  According to Cray, Mr. Ballew had an

9  obligation to "hold Cray's confidential and proprietary information in confidence."  (*Id.*

10 ¶ 24.)

11   In addition, Cray alleges that it entered into three non-disclosure agreements

12 ("NDAs") with Raytheon or a Raytheon agent between November 18, 2003, and

13 February 20, 2004.  (*See id.* ¶¶ 25-27.)  All three NDAs specified that Cray is a

14 Washington corporation and provided that Cray was to disclose confidential and

15 proprietary information to Raytheon for Raytheon to evaluate the possibility of using

16 Cray products.  (*See id.* (noting that the third NDA provided for disclosure to Raytheon

17 of confidential information regarding Red Storm).)  Cray further alleges that "[d]uring

18 the development of the Red Storm System, Cray disclosed extensive confidential and

19 proprietary information to Raytheon, both to Mr. Ballew and others at Raytheon."  (*Id.*

20 ¶ 28.)

21   According to Cray, on April 15, 2004, following Cray's "extensive disclosure of

22 confidential and proprietary information concerning its Red Storm system, including the

ORDER- 4

associated SeaStar interconnect chip," Raytheon and Mr. Ballew filed United States

Patent Application No. 10/824,874 ("the '874 Application"). (*Id.* ¶¶ 28-29.) This

application "was the patent application leading to the '909 and '833 [P]atents," both of

which list Mr. Ballew as an inventor. (*Id.* ¶¶ 20, 28.) The '874 Application "contained

technical information similar or identical to information disclosed to Mr. Ballew and

Raytheon by Cray concerning the Red Storm system." (*Id.* ¶ 29.) Furthermore, Cray

maintains that "Mr. Ballew and others at Raytheon intentionally acquired a substantial

portion of this information from Cray and its employees located in Washington." (*Id.*;

*see also id.* ¶¶ 21 ("[T]he Cray personnel primarily responsible for the SeaStar

interconnect design that was incorporated into the Red Storm system resided and worked

in Washington."), 54.) Cray also asserts that in prosecuting the '909 and '833 Patents,

Raytheon failed to inform the Patent Office that Cray was an inventor of the subject

technology and that Cray's Red Storm system and SeaStar interconnect were material

prior art. (*See, e.g., id.* ¶¶ 54-68, 79-86.)

     In early 2015, Raytheon engaged a Dallas-based patent-licensing firm,

International Patent Licensing Co., LLC ("IPLC"), to offer Raytheon's HPC technology

to Cray. (*See* Stringfield Decl. (Dkt. # 39) ¶ 2, Ex. 1 ("3/20/15 Letter").) IPLC sent Cray

a March 20, 2015, letter identifying four Raytheon patents and explaining how certain

Cray products or services mapped onto those patents. (*See id.*; Stringfield Decl. ¶ 3, Exs.

2-4.) According to Raytheon, the purpose of the letter was to negotiate a license

agreement with Cray that would be fair and beneficial to both parties. (*See* Mot. at 11;

3/20/15 Letter at 2 ("Raytheon has authorized IPLC to represent Raytheon in negotiating

a patent license agreement with Cray that will be fair to both parties and will enable Cray to derive important business benefits, including continued use of Raytheon's patented technology.").)  On May 12, 2015, IPLC sent a follow-up letter providing additional details and reiterating that Raytheon believed in the importance of a licensing discussion and a mutually beneficial agreement with Cray.  (*See* Stringfield Decl. ¶¶ 4-5, Exs. 5-6.) Cray's associate general counsel, Michael Fleming, responded in a May 13, 2015, letter in which he accepted IPLC's "invitation to discuss and understand [Raytheon's] business proposals."  (*Id.* ¶ 6, Ex. 7.)

On June 18, 2015, representatives of Cray and Raytheon met at Cray's Seattle offices.  (*See id.* ¶¶ 6-9, Exs. 7-16.)  During the meeting, Raytheon gave slide presentations showing how Cray products or services map onto five Raytheon patents—four of which were the Patents-in-Suit—explaining the significance and value of Raytheon's patented HPC technology, and describing the development of Raytheon's HPC technology.  (*See id.* ¶¶ 8-9, Exs. 9-16.)  Each of the slide decks was marked with a legend:  "Raytheon / Cray Patent License Settlement Discussions – Federal Rule 408 Applies" or "Raytheon / Cray Patent License Settlement Discussions – U.S. Federal Rule 408 Applies."  (*Id.* ¶ 9, Exs. 10-16.)

In the two weeks following the June 18, 2015, meeting, IPLC sent Cray two emails and one letter.  (*See id.* ¶¶ 8, 10, 12, Exs. 9, 17, 21.)  The first email included the slide decks from Raytheon's presentation.  (*See id.* ¶¶ 8-9, Exs. 9-16.)  The second email and the letter provided additional details regarding some of the patents discussed at the

1   meeting.  (*See id.* ¶¶ 10-13, Exs. 17-22.)  IPLC phrased the second email and the letter as

2   pertaining to the parties' licensing negotiations.  (*See id.* ¶¶ 10, 12, Exs. 17, 21.)

3   **B.   Procedural Background**

4          On July 15, 2015, Cray filed the instant lawsuit against Raytheon.  (*See* Compl.

5   (Dkt. # 1).)  Cray's original complaint contained nine counts, each of which requested a

6   declaratory judgment that Cray does not infringe one of Raytheon's patents.  (*See id.* at

7   4-9.)  The original complaint contained no allegations of misappropriation, breach of an

8   NDA, or misconduct before the Patent Office.  (*See id.* at 1-10.)  Instead, the original

9   complaint alleged only that Raytheon had accused Cray of infringing Raytheon's patents

10  and that a real controversy therefore existed regarding whether Cray indeed infringes.

11  (*See id.*)  On September 25, 2015, Raytheon filed suit against Cray in the Eastern District

12  of Texas alleging infringement of the Patents-in-Suit.  (*See* Stringfield Decl. ¶ 16, Ex.

13  25.)

14         On the same day, Raytheon responded to Cray's original complaint in this case by

15  filing a motion to dismiss.  (*See* MTD (Dkt. # 24).)  Raytheon argued in that motion that

16  this court lacked personal jurisdiction over Cray's claims for declaratory judgment of

17  non-infringement.  (*See id.* at 18-25; *see also id.* at 25-28 (arguing in the alternative that

18  the court lacked subject matter jurisdiction over some of Cray's claims).)  Rather than

19  filing an opposition to that motion, Cray filed its first amended complaint, which is

20  currently the operative complaint.  (*See* Am. Compl. (filed on October 16, 2015).)

21         Cray's amended complaint adds the allegations regarding Cray's work with

22  Sandia, Red Storm, Mr. Ballew, and Raytheon's alleged misappropriation and misuse of

ORDER- 7

1   Cray's HPC technology.  *See supra* § II.A; (*compare* Am. Compl. *with* Compl.)  Further,

2   in the amended complaint Cray has removed five non-infringement counts, repleaded the

3   four non-infringement counts pertaining to the Patents-in-Suit, and added nine new

4   claims.  (*Compare* Am. Compl. *with* Compl.)  Four of the new claims are for declaratory

5   judgments that the '909 and '833 Patents are unenforceable for inequitable conduct and

6   unclean hands.  (*See* Am. Compl. at 10-20.)  Two of the new claims are for correction of

7   inventorship of the '909 and '833 Patents, and the remaining three new claims assert

8   state-law causes of action for unjust enrichment, conversion, and breach of contract.  (*See*

9   *id.* at 20-23.)

10          After Cray filed its amended complaint, the court denied Raytheon's first motion

11  to dismiss without expressing an opinion on the merits of the motion.  (*See* 11/4/15 Order

12  (Dkt. # 36) at 2-3.)  On November 25, 2015, Raytheon filed the present motion to dismiss

13  for lack of personal jurisdiction.  (*See* Mot.)  Raytheon's renewed motion is now before

14  the court.

15                      **III.     DISCUSSION**

16  **A.     Legal Standard**

17          Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss

18  claims against it for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  In

19  opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff

20  bears the burden of establishing that jurisdiction is proper.  *CollegeSource, Inc. v.*

21  *AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).  However, in the absence of an

22  evidentiary hearing, "the plaintiff need only make 'a prima facie showing of

jurisdictional facts to withstand the motion to dismiss'" *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 671-72 (9th Cir. 2012) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)); *see Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328-29 (Fed. Cir. 2008).  Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true, and conflicts between parties over statements in affidavits must be resolved in the plaintiff's favor.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see CollegeSource*, 653 F.3d at 1073; *Avocent Huntsville*, 552 F.3d at 1329.  The court must construe the pleadings and affidavits in the light most favorable to the plaintiff.  *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).

The test for whether personal jurisdiction exists involves two basic inquiries:  (1) whether the applicable long-arm statute is satisfied and (2) whether the assertion of personal jurisdiction satisfies due process.  *See CollegeSource*, 653 F.3d at 1073; *Silent Drive*, 326 F.3d at 1200.  Where, as here, no federal long-arm statute applies, the court applies the long-arm statute of the state in which it sits.  *Schwarzenegger*, 374 F.3d at 800; *see Silent Drive*, 326 F.3d at 1200.  "Washington's long-arm statute extends jurisdiction over a defendant to the fullest extent permitted" by due process.  *Wash. Shoe*, 704 F.3d at 672 (citing RCW 4.28.185 and *Shutte v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989)).  Thus, the court's jurisdictional analysis "collapses into a single determination of whether the exercise of personal jurisdiction comports with due process."  *Avocent Huntsville*, 552 F.3d at 1329; *Wash. Shoe*, 704 F.3d at 672.  Federal

1    due process requires that a nonresident defendant have sufficient "minimum contacts"

2    with the forum such that the exercise of jurisdiction does not "offend traditional notions

3    of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

4    (1945); *see also Schwarzenegger*, 374 F.3d at 801; *Avocent Huntsville*, 552 F.3d at 1329.

5         "Because the issue of personal jurisdiction in a declaratory action for patent

6    invalidity and non-infringement is intimately related to patent law," personal jurisdiction

7    over Cray's patent claims is governed by the law of the Federal Circuit. *Silent Drive*, 326

8    F.3d at 1201 (citing *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations*

9    *Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002)).  However, Ninth Circuit law governs

10   personal jurisdiction over Cray's non-patent claims because that issue is not "intimately

11   involved with the substance of the patent laws." *Avocent Hunstville*, 552 F.3d at 1328

12   (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)); *see also Silent*

13   *Drive*, 326 F.3d at 1201.

14        1.  Specific personal jurisdiction[4]

15        Both the Ninth Circuit and the Federal Circuit employ a three-part test to

16   determine whether an exercise of specific personal jurisdiction satisfies due process.

17   _____

18   [4] Two varieties of personal jurisdiction are possible:  general and specific. *See Goodyear*
     *Dunlop Tires Operations, S.A. v. Brown*, --- U.S. ---, 131 S. Ct. 2846, 2851 (2011).  "A court
     may assert general [personal] jurisdiction over foreign (sister-state or foreign-country)

19   corporations to hear any and all claims against them when their affiliations with the State are so
     'continuous and systematic' as to render them essentially at home in the forum State." *Id.* (citing

20   *Int'l Shoe*, 326 U.S. at 317).  Cray makes no attempt to argue that the court has general personal
     jurisdiction over Raytheon.  (*See* Resp. (omitting any discussion of general personal

21   jurisdiction); Mot. at 16, 18 (discussing general personal jurisdiction and arguing Cray has not
     made a prima facie showing that it exists here).)  As such, the court concludes that Cray has

22   failed to show general personal jurisdiction over Raytheon and addresses only specific personal
     jurisdiction in detail.  *See CollegeSource*, 653 F.3d at 1073.

1   Under the Federal Circuit's formulation of this test, the court asks "(1) whether the

2   defendant 'purposefully directed' its activities at residents of the forum; (2) whether the

3   claim 'arises out of or relates to' the defendant's activities with the forum; and (3)

4   whether assertion of personal jurisdiction is 'reasonable and fair.'"  *Silent Drive*, 326

5   F.3d at 1202 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

6   The Ninth Circuit states its similar test in somewhat more detail:

> (1) The non-resident defendant must purposefully direct his activities or
> consummate some transaction with the forum or resident thereof; or
> perform some act by which he purposefully avails himself of the
> privilege of conducting activities in the forum, thereby invoking the
> benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's
> forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial
> justice, i.e. it must be reasonable.

13   *Wash. Shoe*, 704 F.3d at 672.  Under either test, if the plaintiff meets the first two prongs,

14   the burden shifts to the defendant to put forth a "compelling case" that the exercise of

15   jurisdiction would be unreasonable.  *CollegeSource*, 653 F.3d at 1076 (quoting *Burger*

16   *King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)); *Autogenomics, Inc. v. Oxford Gene*

17   *Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009) (quoting *Breckenridge Pharm., Inc. v.*

18   *Metabolite Labs, Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)).  Specific personal

19   jurisdiction must exist for each claim asserted against a defendant.  *Action Embroidery*

20   *Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

21   //

22   //

ORDER- 11

1          2.  Pendent personal jurisdiction

2          Under some circumstances, a court may assert pendent personal jurisdiction over a

3   defendant on a claim for which no there is no independent basis for personal jurisdiction.

4   *Id.*  A court may do so only when the claim in question "arises out of a common nucleus

5   of operative facts" with a claim in the suit over which the court does have personal

6   jurisdiction.  *Id.* at 1180-81; *Silent Drive*, 326 F.3d at 1206.  "Whether to exercise

7   pendent personal jurisdiction is committed to the sound discretion of the district court."

8   *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004).  For

9   instance, the court may dismiss pendent claims "where considerations of judicial

10   economy, convenience and fairness to litigants so dictate."  *Action Embroidery*, 368 F.3d

11   at 1181 (quoting *Oetiker v. Werke*, 556 F.2d 1, 5 (D.C. Cir. 1977)) (internal quotation

12   marks omitted).

13   **B.    Cray's Claims**

14          As discussed above, Cray asserts thirteen claims in its amended complaint.  (*See*

15   Am. Compl. at 7-23.)  The first eight claims are declaratory judgment claims for non-

16   infringement of the Patents-in-Suit (claims one through four), unenforceability of the

17   '909 and '833 Patents for inequitable conduct (claims five and six), and unenforceability

18   of the '909 and '833 Patents for unclean hands (claims seven and eight).  (*See id.* at

19   7-20.)  In the ninth and the tenth claims Cray asks for correction of inventorship

20   regarding the '909 and '833 Patents, and claims eleven through thirteen are state-law

21   causes of action for unjust enrichment, conversion, and breach of contract.  (*See id.* at

22

20-23.)  Raytheon argues that the court possesses neither specific nor pendent personal

jurisdiction for these claims.  (*See* Mot.; Reply (Dkt. # 44).)

1.  Cray's declaratory claims & specific personal jurisdiction

In actions for declaratory judgment of patent non-infringement, unenforceability,

and invalidity, specific personal jurisdiction arises out of activities that "relate in some

material way to the enforcement or defense of the patent" and are purposefully directed at

the forum.  *Autogenomics*, 566 F.3d at 1019-20; *see also Avocent Huntsville*, 552 F.3d at

1334; *Petzila, Inc. v. Anser Innovation, LLC*, 620 F. App'x 941, 943 (Fed. Cir. 2015).  As

the Federal Circuit has explained:

> [I]n the context of an action for declaratory judgment of non-infringement,
> invalidity, and/or unenforceability, the patentee is the defendant, and the
> claim asserted by the plaintiff relates to the "wrongful restraint [by the
> patentee] on the free exploitation of non-infringing goods . . . [such as] the
> threat of an infringement suit."  Thus, the nature of the claim in a
> declaratory judgment action is "to clear the air of infringement charges."
> Such a claim neither directly arises out of nor relates to the making, using,
> offering to sell, selling, or importing of arguably infringing products in the
> forum, but instead arises out of or relates to the activities of the defendant
> patentee in enforcing the patent or patents in suit.  The relevant inquiry for
> specific personal jurisdiction purposes then becomes to what extent has the
> defendant patentee "purposefully directed [such enforcement activities] at
> residents of the forum," and the extent to which the declaratory judgment
> claim "arises out of or relates to those activities."

*Avocent Huntsville*, 552 F.3d at 1332 (internal citations omitted) (first alteration added)

(quoting *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed.

Cir. 1998), and *Breckenridge*, 444 F.3d at 1363 (last quotation only)).

Although cease-and-desist letters and licensing negotiations may relate to such

claims and be directed at the forum, these activities, without more, are insufficient to

1  confer personal jurisdiction under the "fair play and substantial justice" prong of the due

2  process analysis.  *See id.* at 1334-35; *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785,

3  789 (Fed. Cir. 2011); *Autogenomics*, 566 F.3d at 1019-21; *Silent Drive*, 326 F.3d at 1202

4  (noting that the Federal Circuit's "reasonable and fair" prong corresponds to the "fair

5  play and substantial justice" prong of the *International Shoe* analysis); *Red Wing Shoe*,

6  148 F.3d at 1360-61.  Instead, these activities must be combined with "other activities"

7  related to the defense or enforcement of the patent.  *Silent Drive*, 326 F.3d at 1202; *see*

8  *Avocent Huntsville*, 552 F.3d at 1334.  Such "other activities" include "initiating judicial

9  or extra-judicial enforcement within the forum, or entering into an exclusive license

10  agreement or other undertaking which imposes enforcement obligations with a party

11  residing or regularly doing business in the forum."  *Avocent Hunstville*, 552 F.3d at 1334

12  (collecting cases).

13       The court lacks specific personal jurisdiction over Raytheon for Cray's declaratory

14  claims.  Raytheon's only activities that are related to enforcement or defense of the

15  Patents-in-Suit and directed at Washington are the licensing communications that it sent

16  to Cray and the licensing meeting that took place in Seattle.  (*See* Am. Compl. ¶ 11;

17  Stringfield Decl. ¶¶ 2-13.)  Under Federal Circuit precedent, an assertion of jurisdiction

18  based on such activities alone would not comport with fair play and substantial justice.

19  *See Autogenomics*, 566 F.3d at 1019-21; *Red Wing Shoe*, 148 F.3d at 1360-61.

20       Cray appears to acknowledge that Raytheon's licensing communications and the

21  June 18, 2015, meeting in Seattle are insufficient to confer personal jurisdiction.  (*See*

22  Resp. at 13 ("Raytheon devotes over half of its motion to a single point—that Raytheon's

1   'licensing' activities in Washington do not by themselves create specific personal

2   jurisdiction over patent law declaratory judgment claims.  Raytheon misses the point."

3   (internal citation omitted)).)  Cray argues that its amended complaint alleges "other

4   activities" that, together with the licensing activities, are sufficient to support personal

5   jurisdiction.  (*See id.* at 13-14 ("It is Raytheon's 'other activities,' in combination with its

6   efforts to extract money from Cray, that form the basis for exercising jurisdiction.").)

7   Specifically, Cray asserts that Raytheon's alleged solicitation of Cray's proprietary

8   information from Cray employees in Washington in the early 2000's constitutes "other

9   activities" that relate to Cray's declaratory claims.  (*See id.*)  The court disagrees.

10          The Federal Circuit has made clear that declaratory patent claims such as Cray's

11   arise out of or relate to only enforcement and defense activities.  *See Radio Sys.*, 638 F.3d

12   at 789 ("[A]n action for a declaratory judgment 'arises out of or relates to the activities of

13   the defendant patentee in enforcing the patent or patents in suit,' . . . .") (quoting *Avocent*

14   *Huntsville*, 552 F.3d at 1332)); *Avocent Hunstville*, 552 F.3d at 1334 ("[W]e have

15   consistently required the defendant to have engaged in 'other activities' that relate to the

16   *enforcement* or the *defense of the validity* of the relevant patents." (emphasis in original)).

17   "Thus, only those activities of the patentee that relate to the enforcement or defense of the

18   patent can give rise to specific personal jurisdiction for such an action."  *Radio Sys.*, 638

19   F.3d at 789.  Raytheon's alleged solicitation of Cray's proprietary information prior to

20   filing applications for the Patents-in-Suit does not relate to the enforcement or defense of

21   the Patents-in-Suit.  As such, Raytheon's alleged solicitation activities cannot constitute

22

1    "other activities" that support personal jurisdiction over Raytheon on Cray's declaratory

2    claims.[5]  *See Radio Sys.*, 638 F.3d at 789; *Avocent Hunstville*, 552 F.3d at 1334.

3           Cray resists this conclusion by arguing that the court should broadly construe the

4    Federal Circuit's language requiring that the defendant's contacts relate to "enforcement

5    or defense" of the patent.  (*See* Resp. at 14 n.2.)  Cray argues the Federal Circuit

6    "confirmed" in *Radio Systems* that "activities directed to procurement of a patent, such as

7    patent prosecution, fall within the scope of . . . 'enforcement and defense' activities."  (*Id.*

8    (citing *Radio Sys.*, 638 F.3d at 790).)  The court rejects this argument.  First, in *Radio*

9    *Systems* the Federal Circuit did not hold or even suggest that "enforcement and defense

10   activities" encompasses procurement activities.[6]  Second, none of the conduct that the

11   _____

12          [5] Cray suggests that the court should analyze its inequitable conduct and unclean hands
      declaratory judgment claims separately and that the set of contacts relevant to those claims is
13   broader than for the other declaratory claims.  (*See* Resp. at 14 ("Raytheon fails to substantively
      address the inequitable conduct and unclean hands claims.  Nevertheless, the factual
14   underpinning of those claims root [sic] almost entirely from Raytheon's contacts with Cray in
      Washington—specifically, Raytheon's acquisition of information from Cray and the resulting
15   misconduct before the Patent Office.").)  Cray cites no authority for this proposition.  Although
      the court has been unable to locate any authority that specifically addresses this issue, the Federal
16   Circuit has indicated that declaratory judgment claims such as Cray's all depend on enforcement
      and defense activities as a basis for specific personal jurisdiction.  *See Avocent Huntsville*, 552
17   F.3d at 1334 ("Because declaratory judgment actions raise non-infringement, invalidity, and/or
      unenforceability issues central to enforcement of the patents in question, we have looked beyond
18   the 'arises out of' inquiry and have found jurisdiction where such 'other activities' in some
      identifiable way 'relate to' enforcement of those patents in the forum. . . . [W]e have consistently
19   required the defendant to have engaged in 'other activities' that relate to the *enforcement* or the
      *defense of the validity* of the relevant patents." (emphasis in original)); *Radio Sys.*, 638 F.3d at
20   789 ("[O]nly those activities of the patentee that relate to the enforcement or defense of the
      patent can give rise to specific personal jurisdiction for [an action for a declaratory judgment].");
      *see also Petzila*, 620 F. App'x at 943.  Accordingly, the court rejects Cray's argument.

21          [6] The plaintiff in *Radio Systems* argued that in *Electronics for Imaging, Inc. v. Coyle*, 340
22   F.3d 1344 (Fed. Cir. 2003), the Federal Circuit found personal jurisdiction based only on the
      defendant's contacts with the forum related to marketing a patent. 638 F.3d at 790.  The *Radio*

1  Federal Circuit has found to constitute "other activities" is analogous to soliciting the

2  technology underlying a patent application, as Cray alleges here.  *See Avocent Huntsville*,

3  552 F.3d at 1334-35 (collecting and summarizing Federal Circuit authority on the subject

4  and explaining that "other activities" include initiating judicial or extra-judicial

5  enforcement activities within the forum and entering into an undertaking, such as an

6  exclusive licensing agreement, that imposes enforcement obligations with a forum

7  resident); *Elecs. for Imaging*, 340 F.3d at 1351 (finding sufficient "other activities"

8  where, during prosecution, the defendant-patentee hired a forum-based attorney who

9  contacted the forum-based plaintiff to report on the progress of the pending application).

10  Raytheon's alleged pre-application solicitation of information from Cray does not

11  constitute "other activities" related to the enforcement or defense of the Patents-in-Suit.[7]

12

---

13  *Systems* court distinguished *Electronics for Imaging*, observing that in that case the patentee
hired California (i.e., forum-based) counsel to communicate with the California-based plaintiff
14  on the patentee's behalf, that counsel communicated with the plaintiff on multiple occasions to
report on the progress of the patentee's pending patent application, and that counsel informed the
15  plaintiff that the patentee had a number of patents and had previously sued large companies for
patent infringement and won. *Id.* at 790-91 (also noting that the patentee in *Electronics for
16  Imaging* explicitly threatened litigation unless the plaintiff delivered $18,000,000.00).  The
*Radio Systems* court explained that such conduct went beyond marketing and was relevant to
17  personal jurisdiction because the patentee had "retained agents in the forum to assist in the
enforcement of its patent rights." *Id.* at 791 ("Communications between a forum state attorney
18  and the declaratory judgment plaintiff relating to the enforcement or defense of the patent
therefore constitute in-state contacts that are attributable to the patentee and relevant to the
19  exercise of personal jurisdiction.").  Contrary to Cray's assertion, this portion of *Radio Systems*
does not indicate that "activities directed to the procurement of a patent" qualify as
20  "'enforcement and defense' activities.  (Resp. at 14 n.2.)

21      [7] The court notes that even if Cray were correct that pre-application solicitation of
information relates to enforcement and defense, the court would nevertheless lack personal
22  jurisdiction on Cray's claims for declaratory judgment of non-infringement of the '274 and '714
Patents.  "Other activities" must relate to the enforcement or defense of "the relevant patents."

1   The court therefore lacks specific personal jurisdiction over Raytheon for Cray's

2   declaratory judgment claims.

3       2.   Cray's correction of inventorship claims

4       In its amended complaint, Cray asks the court to rule that Cray is an inventor of

5   the technology disclosed in the '909 and '833 Patents.  (*See* Am. Compl. at 20-21.)  The

6   court denies Raytheon's motion to dismiss these claims for lack of personal jurisdiction.

7   As discussed above, the exercise of specific personal jurisdiction satisfies due process

8   where (1) the defendant purposefully directed its activities at residents of the forum, (2)

9   the claim arises out of or relates to the defendant's activities in the forum, and (3) the

10  assertion of personal jurisdiction is reasonable and fair.  *Silent Drive*, 326 F.3d at

11  1201-02.

12      Cray has adequately alleged that Raytheon purposefully directed its activities at a

13  Washington resident—namely, Cray and its Washington-based employees—and that

14  Cray's correction of inventorship claims arise out of or relate to those activities.  *See id.*

15  Specifically, Cray alleges that (a) its employees, including at least one Washington-based

16  employee named Robert Alverson, developed the technology underlying the '909 and

17  _____

18  *Avocent Huntsville*, 552 F.3d at 1334.  In the amended complaint, Cray alleges that Raytheon

19  obtained Cray's proprietary information and used that information to file the '874 Application, which led to the '909 and '833 Patents.  (*See* Am. Compl. ¶¶ 28-30; *see also id.* ¶¶ 51-108 (alleging inequitable conduct, unclean hands, and correction of inventorship only with respect to

20  the '909 and '833 Patents), 109-23 (mentioning only those two patents in articulating the unjust enrichment, conversion, and breach of contract claims).  Cray does not allege, however, that

21  Raytheon obtained the technology underlying the '274 and '714 Patents from Cray.  (*See* Am. Compl.)  As such, even under Cray's theory of "other activities," Raytheon's alleged solicitation

22  activities would not support personal jurisdiction for Cray's declaratory claims regarding the '274 and '714 Patents.

ORDER- 18

'833 Patents while working on Red Storm and the SeaStar interconnect; (b) Raytheon

solicited proprietary information about Red Storm and the SeaStar interconnect from

Cray and its employees in Washington, including by entering into NDAs with Cray and

through Mr. Ballew, a Raytheon employee who served on the Red Storm oversight

committee; and (c) Raytheon used the information it learned about Red Storm and the

SeaStar interconnect to obtain the '909 and '833 Patents. (*See* Am. Compl. ¶¶ 18-30, 52-

55, 64-65, 79-80, 85-86, 94, 98, 101-08.)

Raytheon argues that the court lacks personal jurisdiction because Cray has not

alleged that any Raytheon activities relevant to this claim "occurred in Washington State,

or that Raytheon 'purposefully directed' any of these activities at Washington residents."

(Mot. at 25-26.) Specifically, according to Raytheon, Cray fails to allege that "Mr.

Ballew's participation in the Sandia committee was related to his Raytheon

employment," that Mr. Ballew "solicited any such allegedly confidential information

from Cray," that "Mr. Ballew came to Washington or obtained allegedly confidential

information from Washington," or that "Raytheon solicited any such confidential

information from Cray or that Raytheon even received any confidential information from

Washington." (*Id.* at 25.) The court disagrees.

As Cray points out in its response brief, when evaluating personal jurisdiction

without an evidentiary hearing, the court must take all uncontroverted allegations in the

complaint as true and construe the pleadings and affidavits in the light most favorable to

Cray. *See CollegeSource*, 653 F.3d at 1073; *Silent Drive*, 326 F.3d at 1201; (Resp. at

12); *see also Wash. Shoe*, 704 F.3d at 672. Cray alleges that Mr. Ballew was a Raytheon

employee during his participation on the oversight committee and used his Raytheon

email address for communications related to the oversight committee.  (*See* Am. Compl.

¶ 23.)  Cray further alleges that Mr. Ballew worked and interacted with Cray employees

residing in Seattle.  (*Id.* ¶ 22.)  In addition, Cray alleges that Raytheon entered into three

NDAs with Cray, all of which identified Cray as a Washington corporation, and pursuant

to which Cray was to disclose to Raytheon proprietary information concerning Red

Storm.  (*See id.* ¶¶ 22-23.)  Cray also alleges that Raytheon "intentionally acquired a

substantial portion of [the information that went into the '874 Application] from Cray and

its employees located in Washington."  (*Id.* ¶ 29; *see also id.* ¶¶ 30, 52-55, 64-65, 79-80,

85-86, 94, 98, 101-08.)  Construing Cray's allegations in the light most favorable to Cray,

the court concludes that Cray has adequately alleged that Raytheon purposefully directed

activities at Washington residents and Cray's correction of inventorship claim arises out

of those activities.  *See Silent Drive*, 326 F.3d at 1201-02.

Raytheon also argues that *Ali v. Carnegie Institute of Washington*, 967 F. Supp. 2d

1367 (D. Or. 2013), shows that Cray's allegations fail to support personal jurisdiction for

correction of inventorship claims.  (*See* Mot. at 26.)  The court has reviewed that case and

finds Raytheon's interpretation unpersuasive.  In attempting to support specific personal

jurisdiction for his claims regarding correction of inventorship, the plaintiff in *Ali* relied

on the defendant-patentee's post-issuance licensing activity within Oregon.  *See* 967 F.

Supp. 2d at 1387, 1390-91.  The *Ali* court found such contacts "irrelevant to an action

seeking to correct the inventorship of an issued patent, which implicates a time period

before the existence of a patent to enforce."  *Id.* at 1390-91.  The court also noted that,

1    according to the plaintiff's allegations, the plaintiff's contributions to the inventive

2    activity occurred in Massachusetts.  *See id.* at 1390.

3          This case is unlike *Ali*.  Cray does not rely on post-issuance contacts to support its

4    correction of inventorship claims, nor does it assert that its contributions to the '909 and

5    '833 Patents occurred outside Washington.  *See id.* at 1390-91; (Am. Compl.)  Accepted

6    as true and construed in the light most favorable to Cray, Cray's allegations show that

7    Cray employees invented the technology underlying the '909 and '833 Patents in

8    Washington, and that Raytheon obtained the '909 and '833 Patents only after acquiring

9    information about that technology through activities directed at Cray and its employees in

10   Washington.  (*See* Am. Compl. ¶¶ 18-30, 52-55, 64-65, 79-80, 85-86, 94, 98, 101-08.)

11   As such, *Ali* does not support Raytheon's position.

12         Because Cray meets the first two elements of the specific personal jurisdiction

13   test, Raytheon bears the burden to present a "compelling case" that the exercise of

14   personal jurisdiction would be unreasonable.  *Autogenomics*, 566 F.3d at 1018.  "The

15   reasonableness inquiry encompasses factors including (1) the burden on the defendant,

16   (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the

17   interstate judicial system's interest in obtaining the most efficient resolution of

18   controversies, and (5) the shared interest of the several states in furthering fundamental

19   substantive social policies."  *Elecs. for Imaging*, 340 F.3d at 1352 (citing *Inamed*, 249

20   F.3d at 1363).  Raytheon has failed to carry its burden of showing that jurisdiction would

21   be unreasonable.

22

1    In its opening brief, Raytheon argues only that efficiency militates against

2  personal jurisdiction.  (*See* Mot. at 26-28.)  Raytheon's argument is based on the

3  assumptions that this court will dismiss Cray's non-infringement claims and that the

4  Eastern District of Texas will retain Raytheon's corresponding infringement claims.  (*See*

5  *id.*)  From that premise, Raytheon asserts that Cray's remaining claims are merely

6  defenses to infringement that would be most efficiently disposed of as part of the

7  infringement litigation in the Eastern District of Texas.  (*See id.*)  According to Raytheon,

8  that case is "well underway."  (*Id.* at 27.)

9    This argument falls well short of making a "compelling case" that exercising

10  jurisdiction would be unreasonable.  *Autogenomics*, 566 F.3d at 1018.  Raytheon's

11  efficiency argument relies on the assumption that the Eastern District of Texas will retain

12  Raytheon's infringement claims; however, Cray has moved to dismiss those claims for

13  improper venue, and it appears that Cray's motion remains pending.  (*See* Mot. at 26-28);

14  *Raytheon Co. v. Cray, Inc.*, No. 15-cv-1554-JRG-RSP, Dkt. # 21 (E.D. Tex.).

15  Furthermore, Raytheon fails to address any other reasonableness factors in its opening

16  brief, and the court does not consider arguments raised for the first time in Raytheon's

17  reply brief.  (*See* Mot.; Reply at 14-15); *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir.

18  1996) ("Issues raised for the first time in the reply brief are waived.").  Although the

19  court will endeavor to protect the interstate judicial system's interest in obtaining the

20  most efficient resolution of controversies, the court lacks sufficient information to

21  determine that exercising personal jurisdiction over Raytheon on Cray's correction of

22

1    inventorship claims is so inefficient that it violates due process.[8]  *See Elecs. for Imaging*,

2    340 F.3d at 1352.  The court therefore denies Raytheon's motion to dismiss Cray's

3    correction of inventorship claims for lack of personal jurisdiction.  *See Autogenomics*,

4    566 F.3d at 1018.

5            3.  Cray's state-law claims

6            Cray brings state-law claims for unjust enrichment, conversion, and breach of

7    contract.  (*See* Am. Compl. at 21-23.)  The court likely has specific personal jurisdiction

8    over these claims, *see CollegeSource*, 653 F.3d at 1076-80 (analyzing specific personal

9    jurisdiction for a claim sounding in tort); *Boschetto v. Hansing*, 539 F.3d 1011, 1016-17

10   (9th Cir. 2008) (analyzing specific personal jurisdiction for a claim sounding in contract);

11   *supra* § III.B.2; however, the court need not address that issue because pendent personal

12   jurisdiction is applicable.  Cray's state-law claims "arise out of a common nucleus of

13   operative facts" with Cray's correction of inventorship claims—namely, Raytheon's

14   alleged solicitation and misappropriation of Cray's technology.  *Silent Drive*, 326 F.3d at

15   1206 (internal quotation marks omitted); *see also Action Embroidery*, 368 F.3d at 1180-

16   81; (Am. Compl. at 4-7, 21-23.)  The court asserts pendent personal jurisdiction for

17

18 _____

19          [8] "Where a defendant who has purposefully directed his activities at forum residents
     seeks to defeat jurisdiction, he must present a compelling case that the presence of some other
20   considerations would render jurisdiction unreasonable.  Most such considerations usually may be
     accommodated through means short of finding jurisdiction unconstitutional.  For example, . . . a
21   defendant claiming substantial inconvenience may seek a change of venue."  *Inamed*, 249 F.3d at
     1363-64 (quoting *Akro*, 45 F.3d at 1546) (alteration in original).  Raytheon has indicated it will
22   file additional motions to dismiss any claims that remain after the court rules on this motion.
     (*See* Mot. at 8 n.4; *see also id.* at 26-27; Reply at 10-11 (arguing that Raytheon's Eastern District
     of Texas case is the first-filed jurisdictionally proper suit).)

1   Cray's state-law claims and therefore denies Raytheon's request to dismiss those claims.

2   *See Silent Drive*, 326 F.3d at 1206; *Action Embroidery*, 368 F.3d at 1180-81.

3           4.   Cray's declaratory claims & pendent personal jurisdiction

4           Although the court exercises specific personal jurisdiction for Cray's correction of

5   inventorship claims, the court does not assert pendent personal jurisdiction for Cray's

6   declaratory claims because the declaratory and correction of inventorship claims do not

7   arise out of a common nucleus of operative facts.  *See Silent Drive*, 326 F.3d at 1206;

8   *Action Embroidery*, 368 F.3d at 1180-81.  As discussed above, Cray's correction of

9   inventorship claims arise out Raytheon's alleged solicitation and misappropriation of

10  Cray's technology, whereas Cray's declaratory claims arise out of Raytheon's

11  enforcement and defense activities.  *See supra* §§ III.B.1-2; *cf. Silent Drive*, 326 F.3d at

12  1205-06 (finding pendent personal jurisdiction for a non-infringement claim based on

13  specific personal jurisdiction for a due process notice claim where both claims arose out

14  of the defendant's efforts to prevent the plaintiff from manufacturing a particular device);

15  *Inamed*, 249 F.3d at 1262-63 (finding pendent personal jurisdiction for non-infringement

16  claims based on specific personal jurisdiction for a patent misuse claim where the

17  defendant previously had an exclusive license agreement with the plaintiff and allegedly

18  made misstatements regarding the patent while negotiating the license).  Furthermore,

19  Cray admits that its "claims for correction of inventorship . . . are not dependent on the

20  //

21  //

22  //

ORDER- 24

functionality of Cray's products" (Resp. at 24 n.4), a factual issue that lies at the core of Cray's non-infringement claims.[9]

The court will not assert pendent personal jurisdiction for Cray's declaratory claims. Consequently, the court grants Raytheon's motion with respect to Cray's declaratory claims and dismisses those claims without prejudice for lack of personal jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Raytheon's motion to dismiss for lack of personal jurisdiction (Dkt. # 37) and DISMISSES counts one through eight of Cray's amended complaint without prejudice.

Dated this 5th day of April, 2016.

JAMES L. ROBART
United States District Judge

---

[9] Cray's inequitable conduct and unclean hands declaratory claims share common factual issues with Cray's correction of inventorship claims. (*See* Am. Compl. at 10-21.) However, even if those claims arise from a common nucleus of operative facts, the court exercises its discretion not to assert pendent personal jurisdiction over Cray's inequitable conduct and unclean hands claims to avoid separating those declaratory claims from Cray's non-infringement declaratory claims. *See CE Distrib.*, 380 F.3d at 1113; *Action Embroidery*, 368 F.3d at 1181.